1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BARBARA WEBB,
                                NO. CIV. S-10-0012 LKK/CMK
11
            Plaintiff,
12
        v.
13                                      O R D E R
     COUNTY OF TRINITY, LINDA
14   WRIGHT, LAURIE SUMNER,
     ELIZABETH HAMILTON, and
15   DOES 1 through 50, inclusive,

16
            Defendants.
17   _____/

18   Plaintiff Barbara Webb was formerly employed by the County of

19   Trinity.  She alleges that after various misdeeds by her

20   supervisor and other county employees she was wrongfully demoted

21   and then terminated.  After proceedings before the California

22   State Personnel Board, the County was ordered to reinstate

23   plaintiff, but the County has refused to comply with this order.

24        One would expect, therefore, that this would be an easy

25   case.  Belying this apparent simplicity, plaintiff's operative

26   complaint enumerates nine claims, challenging the initial

                                  1

actions by the County and individual defendants in addition to
defendants' violation of the Personnel Board order.  Defendants
move to dismiss all claims.  In opposing the motion, plaintiff
references only four of these claims.  The court interprets this
as stating non-opposition to dismissal of the others.  Of the
four disputed claims, one is characterized as a substantive due
process claim, but invokes numerous legal theories at most
tangentially related to due process.  The second disputed claim
argues that the refusal to rehire plaintiff deprived her of
procedural due process.  Plaintiff's third claim is brought
under 42 U.S.C. § 1985, and alleges that defendants violated
plaintiff's equal protection rights by discriminating against
Christians.  Finally, the fourth disputed claim is for
intentional infliction of emotional distress.

   The court resolves the motion to dismiss on the papers and
after oral argument.  For the reasons stated below, the motion
to dismiss is granted except as to plaintiff's allegations that
the county retaliated against her for speech protected by the
First Amendment.

## I. Background

   Before discussing the facts, the court must address the
manner of their presentation.  The operative Second Amended
Complaint ("SAC") presents a threadbare recitation of the facts,
alleging the identities of the parties.  Copies of three
previously-filed government tort claims, presumably filed
pursuant to Cal. Gov. Code § 905, are attached to the complaint,

1   and the complaint explicitly incorporates the allegations

2   contained therein.  SAC ¶ 11.  Although these present a long

3   litany of potential misdeeds, plaintiff now contends that

4   neither the complaint nor the tort claim forms were intended to

5   present a full picture of the facts.  Pl.'s Opp'n at 3.  While

6   plaintiff's opposition purports to provide various additional

7   facts, these facts are in general not new, instead reiterating

8   the allegations contained in the SAC and the government tort

9   claim forms.

10      In this order, the court summarizes only the alleged facts

11  that plaintiff argues are relevant to the disputed causes of

12  action.

13  **A.   Events Leading to Plaintiff's Termination**

14      Plaintiff was formerly employed by County of Trinity as

15  social worker supervisor II.  SAC ¶ 1.  On February 7, 2007,

16  plaintiff received a notice of intent to demote.  SAC Ex. 1, at

17  18.[1]  Plaintiff was placed on administrative leave on that time.

18  On April 16, 2007, she received notice of her disciplinary

19  demotion to the position of Social Worker III, effective

20  February 15, 2007.  Id. and SAC ¶ 16.  Plaintiff alleges that

21  this demotion was without good cause.  SAC ¶ 6.  Id.  She was

22  ordered to return to work on April 30, 2007.  Prior to her

23  scheduled return, on April 25, the County sent a notice of

24  _____

25      [1] The three government tort claims attached as exhibits to the
    SAC do not bear page numbers.  Accordingly, the court cites these
26  exhibits using the page numbers assigned by the court's CM/ECF
    system.

3

1  intent to terminate.  SAC Ex. 1, at 18.  On May 21, 2007, she

2  filed a government tort claim against the County complaining of

3  the above conduct.  Id., SAC ¶ 7.  This claim further alleges

4  that plaintiff was "harassed, ridiculed, degraded, ignored, and

5  subject[ed] to mental anguish."  SAC Ex. 1, at 18.  On May 25,

6  2007, the County terminated plaintiff's employment, again

7  allegedly without good cause.  SAC ¶ 8, Ex. 2 at 26.  In the

8  fall of 2007, plaintiff filed two additional government tort

9  claims against the County.  SAC Ex. 2, 3.

10      Plaintiff attributes a variety of motives to defendants'

11  conduct.  The SAC presents a whistle-blower theory, which is

12  emphasized in that it the only theory supported by specific

13  factual allegations in the SAC itself.  During plaintiff's

14  employment, she was supervised by defendant Wright.  Plaintiff

15  complained that her department, Child Welfare Services ("CWS"),

16  was underfunded, in part because federal funds that should have

17  gone to CWS were allocated to other programs.  SAC ¶ 15.

18  Plaintiff alleges that some of this funding went to the

19  Sheriff's department, apparently to pay for the Sheriff's

20  assistance to CWS, Opp'n at 2, but it is unclear whether

21  plaintiff contends that funding also went to other programs.

22  SAC Ex. 1 at 19, Ex. 2 at 27-28, Ex. 3 at 35 (alleging that

23  funds were diverted without specifying the uses to which the

24  funds were actually put).  The lack of funding for plaintiff's

25  department and concomitant staffing shortage made it difficult

26  for plaintiff to fulfill her duties.  SAC Ex. 1 at 19, Ex. 3 at

4

35.  Wright allegedly threatened to terminate plaintiff if plaintiff complained about this allocation to anyone else.  SAC ¶ 15.  Notwithstanding this threat, when an audit of the county was forthcoming, plaintiff "was prepared to tell the truth to auditors" and informed Wright she would do so.  Id.  Plaintiff does not allege, however, that she actually spoke of the funding allocation to anyone other than Wright.  This audit was completed in December 2006.

Plaintiff alleges that shortly after the above, "discipline of the plaintiff began based upon false charges."  SAC ¶ 15. She contends that the "circumstances and timing" indicate that the discipline was intended to discredit plaintiff before she could speak to the auditors or others about the funding. Insofar as the "discipline" refers specifically to plaintiff's demotion and termination, the court notes that those events occurred in 2007, whereas the incorporated government claim form indicates that the audit concluded in December of 2006.  See SAC Ex. 1 at 19.

Separate from this whistle-blower theory, plaintiff cursorily alleges numerous other improper motivations for her treatment.  The SAC alleges, without explanation, that:

> defendants . . . deprived plaintiff of the Equal Protection guaranteed to plaintiff under the United States Constitution, . . . deprived plaintiff of her right to freedom of religion guaranteed to plaintiff under the United States Constitution, deprived plaintiff of her right to active participation in labor union activities, which constitutes political activity

5

1            entitled to protection under the United
            States Constitution, and deprived plaintiff

2            of her rights under the Family and Medical
            Leave Act.

3

4  SAC ¶ 14.  The attached government claim forms provide some

5  facts relating to medical leave and to religion.

6      As to medical leave, plaintiff alleges that in a period

7  ending July 11, 2006, plaintiff was on "Family Care Medical

8  Leave" in order to care for her hospitalized mother.  SAC Ex. 1

9  at 19.  Shortly after her return, on July 17, Wright threatened

10  plaintiff with loss of her flex day if plaintiff sought

11  additional leave.  Id.  On August 9, 2006, plaintiff requested

12  to use vacation time to provide further care for her mother.

13  SAC Ex. 3 at 36.  This request was denied, and Wright criticized

14  plaintiff's requests in a subsequent performance evaluation.

15  Id.  On August 22, 2006, plaintiff's mother passed away.  SAC

16  Ex. 1 at 19.  Plaintiff was only permitted to take one and a

17  half days off to grieve, with the time coming from plaintiff's

18  earned sick leave.  Id.

19      As to religion, plaintiff's third government claim alleges

20  that she "was repeatedly told [that] there were too many

21  Christians in Children's Protective Services, and was subjected

22  to criticism because she and many of her staff were Christians."

23  SAC Ex. 3 at 28.

24      The SAC and government claims contain no further

25  allegations regarding equal protection or union activity.

26  Plaintiff's opposition to the present motion indicates that the

claim regarding union activity relates to the refusal to re-hire
plaintiff after state administrative proceedings, as discussed
below.

**B.    State Administrative Proceedings**

Plaintiff appealed her demotion and dismissal.  This appeal
was heard by a state administrative law judge ("ALJ"), who held
a dozen hearings on the matter over the course of two years.
The ALJ issued a 49 page order.  The ALJ held that some cause
existed for the county's actions, but nonetheless reduced the
April 16, 2007 demotion to a three month suspension and reduced
the May 25, 2007 termination to a demotion from the position of
Social Worker Supervisor II to Social Worker III and a six month
suspension.[2]  Defs.' Request for Judicial Notice, Ex. A, at 48.
In this suit, plaintiff alleges that contrary to the ALJ's
determination, there was not cause for the imposition of any
discipline.  The ALJ awarded plaintiff back pay, with interest,
and benefits in accordance with the reduction in discipline.
The parties apparently agree that these findings obliged the
County to re-hire plaintiff.

The ALJ's order was reviewed by the California State
Personnel Board.  On October 22, 2009, the Board adopted these
findings in full, with one exception not relevant here.  The
County has refused to re-hire plaintiff in the capacity ordered.

---

[2] The ALJ's order appears not to have specified whether the
three and six month suspensions were consecutive.  This question
is not pertinent to the instant motion, however.

SAC ¶ 20.[3]  Neither party has indicated whether the County has complied with the other obligations imposed by this order.

**C.    Procedural History**

The instant suit began with a complaint filed in state court.  Before serving the complaint on any defendant, plaintiff substituted a first amended complaint.  Defendants removed the suit to federal court on the basis of the federal claims alleged therein.  Defendants then filed a motion to dismiss the complaint in its entirety.  On the parties' stipulation, the court granted this motion in full and granted plaintiff leave to file an amended complaint without reaching the merits of the motion.  Plaintiff filed the operative SAC and defendants timely filed the present motion to dismiss.

**II. Standard for a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss**

A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the

---

[3] Plaintiff states, in her opposition to the present motion, that although the County has refused to employ plaintiff as a Social Worker III, the County has offered to hire plaintiff as an Environmental Health Specialist with the Sheriff's department. Opp'n at 3.  Plaintiff argues that this offer is unacceptable because her earlier complaints of misallocation of funds involved the Sheriff's department, such that the Sheriff retains animosity toward plaintiff, and because the Sheriff would be able to terminate plaintiff during the probationary period that would accompany this position.  Plaintiff also states that she is unqualified for this position.  Id. at 4.  None of these allegations appear in the complaint or the exhibits thereto.

Plaintiff further alleges that the stress following the County's refusal to rehire her has "driven her to medical disability." Id. at 4, 6. Although the SAC alleges that plaintiff has suffered "physical injuries, physical sickness, mental distress, and emotional distress," the SAC does not contain any discussion of disability.  See, e.g., SAC ¶ 16.

1  Federal Rules.  Under Federal Rule of Civil Procedure 8(a)(2), a
2  pleading must contain a "short and plain statement of the claim
3  showing that the pleader is entitled to relief."  The complaint
4  must give defendant "fair notice of what the claim is and the
5  grounds upon which it rests."  Bell Atlantic v. Twombly, 550
6  U.S. 544, 555 (2007) (internal quotation and modification
7  omitted).

8      To meet this requirement, the complaint must be supported
9  by factual allegations.  Ashcroft v. Iqbal, ___ U.S. ___, ___,
10 129 S. Ct. 1937, 1950 (2009).  "While legal conclusions can
11 provide the framework of a complaint," neither legal conclusions
12 nor conclusory statements are themselves sufficient, and such
13 statements are not entitled to a presumption of truth.  Id. at
14 1949-50.  Iqbal and Twombly therefore prescribe a two step
15 process for evaluation of motions to dismiss.  The court first
16 identifies the non-conclusory factual allegations, and the court
17 then determines whether these allegations, taken as true and
18 construed in the light most favorable to the plaintiff,
19 "plausibly give rise to an entitlement to relief."  Id.;
20 Erickson v. Pardus, 551 U.S. 89 (2007).

21     "Plausibility," as it is used in Twombly and Iqbal, does
22 not refer to the likelihood that a pleader will succeed in
23 proving the allegations.  Instead, it refers to whether the
24 non-conclusory factual allegations, when assumed to be true,
25 "allow[] the court to draw the reasonable inference that the
26 defendant is liable for the misconduct alleged."  Iqbal, 129

1  S.Ct. at 1949. "The plausibility standard is not akin to a

2  'probability requirement,' but it asks for more than a sheer

3  possibility that a defendant has acted unlawfully." Id.

4  (quoting Twombly, 550 U.S. at 557).  A complaint may fail to

5  show a right to relief either by lacking a cognizable legal

6  theory or by lacking sufficient facts alleged under a cognizable

7  legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696,

8  699 (9th Cir. 1990).

### III. Analysis

10  Many of the factual disputes underlying the present suit

11  were previously adjudicated by the ALJ.  Although plaintiff

12  contends that the County's refusal to rehire plaintiff is in

13  violation of the resulting order, plaintiff does not seek to

14  enforce that order here; the SAC seeks only monetary relief.

15  Moreover, the court assumes that appropriate mechanism for

16  enforcement of that order would be a state court petition for a

17  writ of mandamus.

18  Conversely, while defendants argue that the ALJ's decision

19  has claim and issue preclusive effects on the present action,

20  defendants explicitly disclaim reliance on preclusion in the

21  present motion, asserting that other arguments provide more

22  easily adjudicated grounds for dismissal.

23  **A.   Overview of Substantive Due Process and 42 U.S.C. § 1983**

24  Plaintiff's first cause of action is for "Deprivation of

25  Rights/Substantive Due Process; 42 U.S.C. § 1983."  The only

26  specific conduct alleged under this claim is imposition of

"discipline . . . based on false charges."  SAC ¶ 15.  This "discipline" apparently refers solely to the demotion and termination, although plaintiff's remaining factual allegations may bear on whether the charges were false.[4]

42 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, deprives a person of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "No State shall . . . deprive any person of life, liberty, or property, without due process of law."  This prohibition has both procedural and substantive components.  The procedural component requires a state actor to provide, before depriving a person of a protected interest, those procedures that are "due" in light of the relevant interests.  These procedures may include notice and an opportunity to be heard.  The substantive component of due process examines the substance of a decision to effect such a deprivation, with the level of scrutiny dependent upon the nature of the protected interest.  See County of Sacramento v. Lewis, 523 U.S. 833, 840 (1998).

Plaintiff implicitly views § 1983 and the Due Process

---

[4] In opposing this motion, plaintiff argues that this claim is also based on the refusal to re-hire plaintiff.  The SAC's second claim argues that the failure to re-hire plaintiff violated the guarantee of procedural due process. Assuming that plaintiff's substantive due process claim is also based on the failure rehire plaintiff does not change the court's analysis of this claim.

Clause's substantive protections, working together, as the
appropriate method to challenge any state violation of federal
law, including, violations of the First Amendment, the Family
Medical Leave Act, and the National Labor Relations Act.  The
court assumes that plaintiff reasoned that § 1983 provides a
cause of action for deprivation of federal rights, the Due
Process Clause provides a right not to be deprived of life,
liberty or property without substantive justification, and
action that violates federal law is in a sense unjustified.
More subtly, because the amendments constituting the Bill of
Rights apply to states only by virtue of their incorporation
into the Fourteenth Amendment's Due Process Clause, a claim that
a state actor has violated these rights is, in a sense, a due
process claim.

      In practice, however, a claim that a state actor has
violated federal law other than the Due Process Clause is
brought under § 1983 without reference to due process.  This is
so even for claims invoking amendments incorporated against
states by operation of the Due Process Clause.  See, e.g.,
Anthoine v. N. Cent. Counties Consortium, 605 F.3d 740, 748 (9th
Cir. 2010).  This practice favors plaintiffs, as it avoids the
narrow standard of review applied in substantive due process
cases as well as the need to demonstrate that the federal right
or privilege at issue is a life, liberty, or property right
protected by the Due Process Clause.  In the employment
termination context, these barriers can be significant.  See,

1  e.g., Engquist v. Or. Dep't of Agric., 553 U.S. 591 (2008)

2  (quoting Bishop v. Wood, 426 U.S. 341, 350 (1976)) (holding that

3  in general "the Due Process Clause does not protect a public

4  employee from discharge, even when such discharge was mistaken

5  or unreasonable.").

6      Moreover, the Supreme Court and Ninth Circuit have

7  specifically held that substantive due process cannot be used to

8  vindicate other constitutional rights. "If, in a § 1983 suit,

9  the plaintiff's claim can be analyzed under an explicit textual

10  source of rights in the Constitution, a court should not resort

11  to 'the more subjective standard of substantive due process.'"

12  Hufford v. McEnaney, 249 F.3d 1142, 1151 (9th Cir. 2001)

13  (quoting Armendariz v. Penman, 75 F.3d 1311, 1319 (9th Cir.

14  1996) (en banc) (citing Graham v. Connor, 490 U.S. 386, 394-95

15  (1989))). Hufford held that a public employee had raised

16  material questions as to whether defendants terminated him in

17  violation of his First Amendment Rights and then dismissed the

18  employee's substantive due process claim as redundant. Id. Of

19  course, an action may violate multiple constitutional

20  prohibitions, and not every substantive due process claim will

21  be duplicative. For example, the Ninth Circuit has held that a

22  claim that "an otherwise proper interference [with land use]

23  amount[s] to a taking" is distinct from a claim that "a land use

24  action that is 'so arbitrary or irrational that it runs afoul of

25  the Due Process Clause.'" Shanks v. Dressel, 540 F.3d 1082,

26  1087 (9th Cir. 2008) (citing Lingle v. Chevron U.S.A., Inc., 544

U.S. 528, 542 (2005)).  Similarly, an adverse employment action could presumably be arbitrary and capricious even if not retaliatory.  In the operative complaint, however, plaintiff has not stated such a claim.  Instead, plaintiff solely argues that defendants' actions were improper because they deprived her of rights guaranteed by other Constitutional provisions or by federal statutes.

The court is not aware of any case extending <u>Graham</u> and its progeny to hold that a court should not resort to substantive due process when a claim may be analyzed under a federal statute, as opposed to a specific constitutional provision.  In this case, it nonetheless appears that plaintiff has invoked substantive due process merely as a result of misunderstanding, rather than out of any need or desire to rely on substantive due process specifically.  Accordingly, the court construes plaintiff's discussion of statutory rights as an invocation of those statutes directly, without reference to due process.  The court does not reach the question, however, of whether substantive due process *could* be used in the manner suggested by plaintiff.  If plaintiff sees some advantage in this case arising from invocation of substantive due process, plaintiff may restate such a claim in an amended complaint.

**B.   § 1983 First Amendment Claim**

The First Amendment drastically limits government's ability to punish or prohibit speech when government acts as a sovereign. <u>Engquist</u>, 553 U.S. at ___, 128 S.Ct. at 2152 (quoting

14

Connick v. Myers, 461 U.S. 138, 147 (1983)).  The Supreme Court has held that government's actions as a sovereign, however, are distinct from government's actions "as proprietor," with the latter including management of its own employees.  Id. at 2151. In light of this distinction, the Court has held that "constitutional review of government employment decisions must rest on different principles than review of . . . restraints imposed by the government as sovereign."  Id. (quoting Waters v. Churchill, 511 U.S. 661, 674 (1994)).

In numerous cases, the Supreme Court has applied the above distinction in the First Amendment context.  The Ninth Circuit recently and repeatedly synthesized these cases to articulate

> a "sequential five-step series of questions" to determine whether [a public] employer impermissibly retaliated against an employee for protected speech:
> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

Anthoine, 605 F.3d at 748 (quoting Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009)); see also Huppert v. City of Pittsburg, 574 F.3d 696, 702 (9th Cir. 2009), Desrochers v. City of San Bernardino, 572 F.3d 703, 709 (9th Cir. 2009), Robinson v. York, 566 F.3d 817, 822 (9th Cir. 2009), c.f. Posey v. Lake Pend

15

1   Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008)

2   (in a case decided prior to Enq, adopting a separate formulation

3   of the same test).  All of these cases concerned summary

4   judgment, rather than a motion to dismiss.  Similar multi-part

5   tests are used in the employment discrimination context, where

6   the tests are recognized to be evidentiary presumptions not

7   squarely applicable at the motion to dismiss stage.  See

8   McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (a

9   plaintiff may show a prima facie case for employment

10  discrimination by showing (1) membership in a protected group;

11  (2) qualification for the job in question; (3) an adverse

12  employment action; and (4) circumstances that support an

13  inference of discrimination), Swierkiewicz v. Sorema N.A., 534

14  U.S. 506, 510, 514 (2002) (holding that the McDonnell Douglas

15  test is a route to an evidentiary presumption usable at summary

16  judgment and that this test is not a pleading requirement); see

17  also Maduka v. Sunrise Hosp., 375 F.3d 909, 912 (9th Cir. 2004).

18  Thus, the court doubts whether every step of the Enq framework

19  should be applied at the pleading stage.  The court need not

20  resolve this question, however.  Defendants only dispute whether

21  plaintiff has alleged the first, second, and third elements of

22  this test.[5]  Assuming without deciding that plaintiff must

23  allege facts as to these specific issues, the court concludes

24

25       [5] That is, defendants challenge plaintiff's showing as to
    these issues. Although defendants cite Anthoine, defendants do not
26  acknowledge the Ninth Circuit's articulation of this test.

16

1 that plaintiff has done so here.

2     **1.   Public Concern**

3     The first issue is whether the speech was on a matter of

4 public concern.[6]  This is a question of law.  <u>Anthoine</u>, 605 F.3d

5 at 748 (citing <u>Eng</u>, 552 F.3d at 1070).  "Although the boundaries

6 of the public concern test are not well defined," the Supreme

7 Court has directed courts to "examine the content, form, and

8 context of a given statement, as revealed by the whole record."

9 <u>City of San Diego v. Roe</u>, 543 U.S. 77, 83-84 (2004) (quoting

10 <u>Connick</u>, 461 U.S. at 147-48) (internal quotations removed).

11 Content is the most important factor.  <u>Anthoine</u>, 605 F.3d at 748

12 (citing <u>Desrochers</u>, 572 F.3d at 710).

13     In this case, plaintiff argues that her complaints to

14 Wright about funding allocation were protected speech.

15 Beginning with the content of this speech, courts have held that

16 public funding decisions are matters of public concern.

17 <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563, 571 (1968) ("the

18 question whether a school system requires additional funds is a

19 matter of legitimate public concern."), <u>Huppert</u>, 574 F.3d at

20 703-04 (citing <u>Johnson v. Multnomah County</u>, 48 F.3d 420, 425

21 (9th Cir. 1995)) ("misuse of public funds" is a matter of public

22

23     [6] In <u>Huppert</u>, the Ninth Circuit observed that other circuits
had held that the initial inquiry should be whether the employee
24 spoke pursuant to his job duties.  The panel believed that this
should be the proper sequence, but held that in the Ninth Circuit,
25 <u>Eng</u> was binding authority requiring that courts begin with the
question of public concern.  574 F.3d at 702-03.  The undersigned
26 agrees with <u>Huppert</u>'s assessment of this issue.

1  concern).

2      Here, defendants seek to distinguish these cases by arguing

3  that plaintiff was motivated by her personal concern for her own

4  working conditions, rather than concern for the interests of the

5  general public.  The Ninth Circuit's has held that "[i]n a close

6  case, when the subject matter of a statement is only marginally

7  related to issues of public concern," the motive for speaking

8  may lead to the conclusion that the speech was not on a matter

9  of public concern.  Johnson, 48 F.3d at 425.  Thus, in cases

10 where the content of the speech did not demonstrate public

11 concern, the Ninth Circuit has examined motive.  Desrochers, 572

12 F.3d at 714-15, Havekost v. United States Dep't of Navy, 925

13 F.2d 316, 318 (9th Cir. 1991).  Motive is not a "litmus test"

14 for public concern, however, Havekost, 925 F.2d at 318, and

15 where the content of the speech plainly implicates the public

16 concern, motive cannot overcome this implication.  Thus, the

17 Ninth Circuit has held that statements about "'misuse of public

18 funds . . . are matters of inherent public concern,' *regardless*

19 *of the purpose for which they are made.*"  Posey, 546 F.3d at

20 1130 (quoting Johnson, 48 F.3d at 425) (emphasis added).

21     Finally, looking to the context of the speech, the fact

22 that plaintiff was not speaking to the general public, or to

23 anyone outside the place of employment, does not itself

24 demonstrate that her speech was not a matter of public concern.

25 Givhan v. Western Line Consol. School Dist., 439 U.S. 410, 413-

26 16 (1979) (school teacher's speech to school principal regarding

18

1 | allegedly racially discriminatory hiring was speech on a matter
2 | of public concern); accord Garcetti v. Ceballos, 547 U.S. 410,
3 | 420-21 (2006), Anthoine, 605 F.3d at 749.

4 |     Synthesizing these factors, the court concludes that
5 | plaintiff has alleged speech that was a matter of public
6 | concern.

7 |     **2.   Speech as a Private Citizen or Public Employee**

8 |     The second step in the Eng inquiry is whether the plaintiff
9 | spoke as a private citizen or public employee.  "[S]peech which
10 | 'owes its existence to an employee's professional
11 | responsibilities' is not protected by the First Amendment."
12 | Huppert, 574 F.3d at 704 (quoting Garcetti, 547 U.S. at 421).
13 | The Ninth Circuit has held "that statements are made in the
14 | speaker's capacity as citizen if the speaker 'had no official
15 | duty' to make the questioned statements, . . . or if the speech
16 | was not the product of 'perform[ing] the tasks [the employee]
17 | was paid to perform.'"  Posey, 546 F.3d at 1127 (quoting Marable
18 | v. Nitchman, 511 F.3d 924, 932-933 (9th Cir. 2007) and Freitag
19 | v. Ayers, 468 F.3d 528, 544 (9th Cir. 2006)).  This inquiry is a
20 | mixed question of fact and law.  Id. at 1129.  The plaintiff
21 | bears the burden of proof on this issue.  Eng, 552 F.3d at 1071.

22 |     As with the public concern inquiry, for purposes of the
23 | official duties test, the facts that the speech "concerned the
24 | subject matter of . . . employment" and was made internally
25 | rather than to the public are not dispositive.  Marable, 511
26 | F.3d at 932 (citing Garcetti, 547 U.S. at 421).  Instead,

1  *Garcetti* and the Ninth Circuit cases interpreting it have looked
2  to whether the employee had a duty to make the speech in
3  question.

4       Cases concluding that speech was made pursuant to an
5  employee's official duties have found a duty to make the
6  specific speech at issue.  For example, in *Garcetti*, the
7  plaintiff assistant District Attorney had written a memo to his
8  supervisor regarding the propriety of a search warrant.  547
9  U.S. at 421.  The Court held that plaintiff was speaking "as a
10 prosecutor fulfilling a responsibility to advise his supervisor
11 about how best to proceed with a pending case."  *Id.*  In *Freitag*
12 *v. Ayers*, 468 F.3d 528, 544, 546 (9th Cir. 2006) plaintiff
13 prison guard's complaints about prisoners' sexual harassing
14 behavior, when made to her CDCR supervisors, were part of her
15 official duties because she had a specific duty to report
16 prisoner misconduct.  In *Huppert*, 574 F.3d at 705-709, plaintiff
17 police officer's speech was made as part of his official duties
18 because it was either made at the direction of his supervisors
19 or was speech made pursuant to specific duties that California
20 statutes impose on police officers.

21      On the other hand, Ninth Circuit cases concluding that a
22 public employee spoke as a private citizen found no specific
23 duty to speak.  In *Marable*, plaintiff was a chief engineer on a
24 ferry who had complained of his supervisors' corruption.  The
25 plaintiff "had no official duty to ensure that his supervisors
26 were refraining from the alleged corrupt practices."  511 F.3d

at 933.   In <u>Anthoine</u>, a low-level employee spoke to the

Executive Director of alleged misuse of public funds.   The Ninth

Circuit held that this speech was not made in his employment

capacity, because there was no evidence of a duty to "report

such misconduct through proper channels," and even if there was

such a duty, there no evidence that speech at issue was made

through those channels or pursuant to such a duty.   <u>Anthoine</u>,

605 F.3d at 750.   In <u>Freitag</u>, although the prison guard's

complaints to other CDCR officials pursuant to CDCR's official

policies were part of the guard's official duties, the guard's

complaints to other individuals, including elected legislators,

were not.   468 F.3d at 546.

In this case, the allegations before the court do not

demonstrate that plaintiff had an official duty to communicate

with Wright, her supervisor, regarding the sufficiency of the

department's funding or other inter-departmental funding

concerns.   As noted above, the Ninth Circuit has held that this

step of the <u>Eng</u> inquiry is a mixed question of law and fact.

Other district courts have held that when a factual dispute

existed regarding the scope of an employee's duties, the court

cannot decide the issue.   <u>See, e.g.</u>, <u>McGuire v. Washington</u>, No.

C09-5198, 2010 U.S. Dist. LEXIS 29870 (W.D. Wash. Mar. 26, 2010)

(denying summary judgment), <u>Galli v. Pittsburg Unified Sch.</u>

<u>Dist.</u>, No. C 09-03775, 2009 U.S. Dist. LEXIS 110643 (N.D. Cal.

Nov. 30, 2009) (denying a Fed. R. Civ. P. 12(b)(6) motion to

dismiss in pertinent part), <u>Creighton v. City of Livingston</u>, 628

1  F. Supp. 2d 1199, 1212 (E.D. Cal. 2009) (denying a Rule 12(c)
2  motion for judgment on the pleadings).  At this stage, the court
3  assumes that the speech was not made pursuant to plaintiff's
4  official duties.

5      **3.   Substantial or Motivating Factor for Adverse**
6          **Employment Action**

7      The third step of the <u>Eng</u> inquiry, and the final issue
8  challenged by defendants here, is "whether the plaintiff's
9  protected speech was a substantial or motivating factor in the
10  adverse employment action."  One way for a plaintiff to
11  demonstrate such motivation is to show that the employer's
12  proffered evidence for the action was false or pretextual.
13  <u>Anthoine</u>, 605 F.3d at 750.  Here, plaintiff alleges that the
14  discipline was baseless, offering considerable detail in this
15  regard.  On a motion to dismiss, the court credits plaintiff's
16  allegation that the County would not have disciplined plaintiff
17  but for the protected speech.

18      Defendants' argument on this issue is that the ALJ
19  determined that the County had good cause to impose some
20  discipline.  Defendants have not attempted to show that the
21  ALJ's determinations are entitled to any preclusive effect.
22  Accordingly, at this point the court will not examine these
23  findings or their relationship the ALJ's decision to reduce the
24  discipline imposed--i.e., the court does not determine whether
25  the ALJ reduced the discipline because defendants lacked good
26  cause for termination or for some other reason.

1    In summary, the court construes plaintiff's complaint as
2  advancing a § 1983 claim for retaliation in violation of
3  plaintiff's First Amendment rights and the court denies
4  defendant's motion to dismiss as to this claim.
5  **C.   § 1983 Claim Predicated on the Family Medical Leave Act**
6    Plaintiff's section 1983 substantive due process claim also
7  argues that defendants violated plaintiff's right to due process
8  by depriving her of benefits owed under the Family Medical Leave
9  Act, 29 U.S.C. § 2601 et seq.  For the reasons stated above, the
10 court sets aside the substantive due process portion of this
11 claim, and interprets plaintiff's complaint as alleging a
12 section 1983 claim predicated on violation of the FMLA directly.
13 For the reasons thoroughly explained in Hayduk v. City of
14 Johnstown, 580 F. Supp. 2d 429, 480-86 (M.D. Pa. 2008), the
15 court concludes that section 1983 may not be used to vindicate
16 the rights provided by the FMLA, although the court concedes
17 that it is not aware of any binding authority directly
18 addressing this issue.  The court summarizes Hayduk's analysis
19 here.
20    In general, courts presume that section 1983 provides a
21 mechanism for enforcement of all federal statutory rights.  Me.
22 v. Thiboutot, 448 U.S. 1, 5 (1980) (rejecting contention that §
23 1983 applies only to civil rights statutes and constitutional
24 rights).  "[T]he defendant may defeat this presumption by
25 demonstrating that Congress did not intend" that § 1983 furnish
26 a remedy for the rights created by the statute.  Rancho Palos

23

1  Verdes, 544 U.S. at 120.  Such an intent may be inferred where

2  the statute at issue provides "a comprehensive enforcement

3  scheme that is incompatible with individual enforcement under §

4  1983."  Blessing v. Freestone, 520 U.S. 329, 341 (1997).

5      The FMLA provides its own remedial scheme, including a

6  specific private right of action.  29 U.S.C. § 2617.[7]  The

7  inclusion of an "express, private means of redress in the

8  statute itself is ordinarily an indication that Congress did not

9  intend to leave open a more expansive remedy under § 1983."

10  Rancho Palos Verdes, 544 U.S. at 121.  Although the Court has

11  expressly declined to state whether the presence of such a

12  specific remedy is conclusive, as a practical matter, "'the

13  existence of a more restrictive private remedy . . . has been

14  the dividing line' between the cases in which the Supreme Court

15  has held that § 1983 applied and those in which it has held that

16  it did not."  Hayduk, 580 F. Supp. 2d at 483 (quoting Rancho

17  Palos Verdes, 544 U.S. at 121).  The remedy provided by the FMLA

18  is plainly more restrictive than the one provided by § 1983.

19  Section 1983, unlike the FMLA, allows recovery of nominal,

20  punitive, and non-economic damages.  Id. at 483-84.  The FMLA,

21  unlike § 1983, requires a would-be plaintiff to seek a right to

22  sue letter from the Equal Employment Opportunity Commission

23  before filing suit and a plaintiff may not sue if the Secretary

24  of Labor decides to pursue the action.  29 U.S.C. § 2617(a)(4).

25  _____

26  [7] Plaintiff's first amended complaint invoked this provision
in a separate claim, but the SAC abandoned this claim.

1  In light of these differences, the court concludes that the FMLA

2  supplants, rather than supplements, the remedial scheme provided

3  by § 1983.

4      If the court were to construe plaintiff's complaint as

5  alleging a claim directly under the cause of action provided by

6  the FMLA, such a claim would fail because plaintiff has not

7  alleged that she received a right to sue letter from the EEOC

8  prior to filing suit.

9      If the court were to take plaintiff's complaint at face

10  value, as alleging a violation of the FMLA so severe as to

11  violate the constitutional guarantee of substantive due process,

12  the court would still conclude that section 1983 could not be

13  used to bring such a claim.  Wrapping a FMLA claim in due

14  process does not circumvent the intent analysis provided above,

15  and the FMLA process would apparently provide an adequate remedy

16  for such a constitutional violation (assuming that the

17  constitutional claim was viable at all).

18      Accordingly, the court grants defendants' motion to dismiss

19  insofar as it challenges plaintiffs' theories of liability

20  predicated on violation of the FMLA.

21  **D.  § 1983 Claim predicated on the Labor Management Relations**

22      **Act and the National Labor Relations Act**

23      The SAC alleges that defendants deprived plaintiff of the

24  "right to active participation in labor union activities,"

25  without those activities.  Plaintiff's opposition, but not

26  complaint, explains that her theory of liability is that

25

1    County's refusal to re-hire plaintiff either deprived her of

2    rights granted under a collective bargaining agreement--namely,

3    the benefit of the procedures used before the state ALJ--or was

4    in retaliation for plaintiff's exercise of that right.

5    Plaintiff contents that this violated the National Labor

6    Relations Act ("NLRA") and the Labor Management Relations Act

7    ("LMRA").  Although the connection between this argument and the

8    quoted allegation is tenuous, the court accepts the opposition.

9        Defendants correctly note that the NLRA does not apply to

10   county employees.  29 U.S.C. § 152(2) ("The term 'employer'  .  .

11   .  shall not include . . . any State or political subdivision

12   thereof.").  The provision of the Labor Management Relations Act

13   cited by plaintiff, 29 U.S.C. § 185, pertains to suits by and

14   against labor unions, and is therefore inapplicable here.

15   Accordingly, plaintiff's allegations regarding union rights do

16   not provide support for a cognizable claim.

17   **E.   § 1983 Claim Predicated on Equal Protection and Religious**

18   **Exercise**

19       As noted above, plaintiff alleges that defendants deprived

20   her of her rights to equal protection and freedom of religion as

21   guaranteed by the United States Constitution.  SAC ¶ 14.  Both

22   of these allegations pertain to the underlying allegation that

23   plaintiff "was repeatedly told [that] there were too many

24   Christians in Children's Protective Services, and was subjected

25   to criticism because she and many of her staff were Christians."

26   SAC Ex. 3 at 28.

1   Claims for employment discrimination premised on religious

2   animus are ordinarily brought under Title VII.  See 42 U.S.C. §

3   2000e-2(a)(1).  Like the FMLA, Title VII requires would-be

4   plaintiffs to secure a right to sue letter as a prerequisite to

5   suit.  42 U.S.C. § 2000e-5(f).  Unlike the FMLA, Title VII's

6   enforcement scheme does not displace § 1983 so long as the claim

7   is not based on violation of Title VII itself.  See, e.g.,

8   Roberts v. College of Desert, 870 F.2d 1411, 1415 (9th Cir.

9   1988) ("Title VII does not preempt an action under section 1983

10   for a violation of the fourteenth amendment.").

11   Plaintiff's allegations regarding religion and equal

12   protection nonetheless fail to support a claim.  The only

13   conduct for which plaintiff alleges a religious motive is

14   "criticism."  Although verbal conduct may in some cases create a

15   hostile work environment actionable under Title VII, plaintiff

16   has not brought a Title VII claim.  Plaintiff provides no

17   authority supporting the contention that such criticism offends

18   underlying constitutional rights.

19   **F.   § 1983 Procedural Due Process Claim**

20   Plaintiff's procedural due process claim is based solely on

21   the County's refusal to re-hire plaintiff after the ALJ held

22   that plaintiff should not have been terminated.

23   The court agrees that the County's alleged refusal to

24   comply with a lawful order is troubling, and that there may be

25   situations in which such a refusal violates either substantive

26   or procedural due process.  In this claim plaintiff specifically

27

invokes procedural due process.  Plaintiff has not addressed, however, what process is available or what process should have been provided.  Plaintiff's sole assertion on this issue is that the refusal to re-hire plaintiff is the equivalent to a decision to terminate plaintiff in the first instance.  SAC ¶ 21, Opp'n at 8.  The court interprets this as arguing that plaintiff's alleged protected property interest in her job entitled her to pre-termination notice and a hearing.  See Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 543 (1985) (holding that for the particular public employee at issue, informal pre-termination hearing coupled with formal post-termination hearing satisfied due process).  Plaintiff has provided no argument as to why refusal to comply with the personnel board order is the equivalent of such a termination.  Nor has plaintiff alleged that other process, such as a state proceeding to enforce the personnel board order, is unavailable.

Absent further detail, the court cannot conclude that plaintiff has alleged facts from which the court may reasonably infer a due process violation.  Accordingly, this claim is dismissed with leave to amend.

**G.   §§ 1985 and 1986 Claims**

Plaintiff's third claim invokes 42 U.S.C. § 1985. Plaintiff presumably intends to rely on that portion of § 1985(3) that prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws."  Plaintiff's

fourth claim invokes § 1986, which provides a cause of action for the failure to prevent the acts prohibited by § 1985.

Plaintiff's opposition addresses the § 1985 claim only in passing, and makes no mention of the § 1986 claim. Nonetheless, the court will assume that plaintiff has not intended to abandon these claims.

Plaintiff alleges that she is Christian, that Christians are a protected class within the meaning of this statute, and that defendants conspired to deprive Christians of their equal rights. SAC ¶ 25. Without reaching the issue of whether section 1985(3) extends to conspiracies based upon religious animus,[8] the court concludes that these claims fail for the

---

[8] The Ninth Circuit has held that plaintiffs under § 1985(3) must show "that they are members of a class that the government has determined 'requires and warrant[s] special federal assistance in protecting their civil rights.'" RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002) (quoting Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992)). The Ninth Circuit appears not to have determined whether a religious group may be such a class for purposes of § 1985(3).
    Defendants assert that "The Fifth Circuit is the only one to have addressed [whether conspiracies based on religious animus are prohibited by § 1985(3)] since the Supreme Court's seminal decision in Bray v. Alexandria Women's Health Clinic, 506 U.S. 263 (1993). Defendants rely on Word of Faith World Outreach Ctr. Church v. Sawyer, 90 F.3d 118, 124 (5th Cir. 1996), which held that conspiracies based on religious animus were not prohibited. Although defendants correctly characterize Sawyer, defendants are incorrect about other circuits. For example, both the Seventh and Second Circuits have held that § 1985(3) extends to conspiracies based on religious animus. Brokaw v. Mercer County, 235 F.3d 1000, 1024 (7th Cir. 2000) (citing Volk v. Coler, 845 F.2d 1422, 1434 (7th Cir. 1988)), LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 427 (2d Cir. 1995) (citing Jews for Jesus, Inc. v. Jewish Community Relations Council of N.Y., Inc., 968 F.2d 286, 291 (2d Cir. 1992) and Colombrito v. Kelly, 764 F.2d 122, 130-31 (2d Cir. 1985)).

1  reasons discussed in part III(E) above.  Accordingly, the court

2  dismisses plaintiff's third and fourth claims.

3  **H.    Qualified Immunity and Monell Liability**

4       Above, the court has construed the complaint as a § 1983

5  claim for deprivation of plaintiff's First Amendment rights.

6  Section 1983 claims against government officials may be limited

7  by the doctrine of qualified immunity.  Defendants raise this

8  doctrine only in regard to due process, arguing that a

9  reasonable officer would not have believed that plaintiff had a

10 property interest in her job that was protected by the Due

11 Process Clause.  Because any ambiguity as to whether there was a

12 protected property interest is irrelevant as to the surviving

13 claim.  Defendants may renew their qualified immunity argument

14 in a future motion.

15      The county, unlike the individual officers, invoke

16 qualified immunity.  The county's liability under § 1983 is

17 nonetheless limited as explained by Monell v. Dep't of Social

18 Servs., 436 U.S. 658 (1978).  Because the county has not raised

19 this issue, the court does not address it here.

20 **I.    Intentional Infliction of Emotional Distress**

21      The final claim for which plaintiff opposes dismissal is

22 the claim for intentional infliction of emotional distress.

23 Under California Law, the elements of a claim for intentional

24 infliction of emotional distress are "(1) extreme and outrageous

25 conduct by the defendant with the intention of causing, or

26 reckless disregard of the probability of causing, emotional

1  distress; (2) the plaintiff's suffering severe or extreme
2  emotional distress; and (3) actual and proximate causation of
3  the emotional distress by the defendant's outrageous conduct."
4  Davidson v. City of Westminster, 32 Cal. 3d 197, 209 (1982); see
5  also Christensen v. Superior Court, 54 Cal. 3d 868, 903 (1991).
6      Plaintiff's complaint alleges that defendants intentionally
7  inflicted emotional distress by "concocting false and unfounded
8  charges and allegations against plaintiff and using those false
9  charges and allegations to take plaintiff's job" and by "making
10 false and damaging statements about plaintiff."  SAC ¶ 57.
11     The court dismisses this claim on two grounds.  First, the
12 claim appears to be barred by the exclusivity of the workers'
13 compensation system.  The California Supreme Court recently
14 addressed a similar claim as follows:
15          Plaintiffs allege defendants engaged in
            "outrageous conduct" that was intended to,
16          and did, cause plaintiffs "severe emotional
            distress," giving rise to common law causes
17          of action for intentional infliction of
            emotional distress. The alleged wrongful
18          conduct, however, occurred at the worksite,
            in the normal course of the employer-
19          employee relationship, and therefore
            workers' compensation is plaintiffs'
20          exclusive remedy for any injury that may
            have resulted.
21
22 Miklosy v. Regents of University of California, 44 Cal. 4th 876,
23 902 (2008); see also Pichon v. Pac. Gas & Elec. Co., 212 Cal.
24 App. 3d 488, 496 (1989) ("emotional distress injuries caused by
25 termination of employment are compensable under the Workers'
26 Compensation Act and, therefore, . . . the exclusive remedy for

1  all of appellant's claims for injuries to his psyche, regardless

2  of the title of the cause of action, was workers'

3  compensation."). <u>Miklosy</u> was careful to distinguish claims for

4  intentional infliction of emotional distress from, for example,

5  claims that an employee was terminated for whistle-blowing.  44

6  Cal. 4th at 902.  Thus, although the worker's compensation

7  exclusivity rule may not bar other potential state law claims

8  and does not limit the federal claims, plaintiff's claim for

9  intentional infliction of emotional distress is barred.

10      Second, the court dismisses this claim because plaintiffs'

11 counsel conceded at oral argument that plaintiff had failed to

12 present her claim for intentional infliction of emotional

13 distress in the government tort claim forms filed prior to

14 initiation of this suit.

15      For these reasons, this claim is dismissed with prejudice.

16                        **IV. Conclusion**

17      Defendants' motion to dismiss is GRANTED IN PART.

18 Plaintiffs' state law claims (her fifth through ninth causes of

19 action) are DISMISSED WITH PREJUDICE.  Plaintiffs' federal

20 claims (her first through fourth claims) are DISMISSED WITHOUT

21 PREJUDICE, except insofar as plaintiff alleges that defendants

22 violated her first amendment rights by terminating her in

23 retaliation for speaking about misuse of public funds.  As to

24 this last theory of liability, defendants' motion to dismiss is

25 DENIED.

26 ////

1    Plaintiff is granted leave to file an amended complaint,

2 consistent with the above, within twenty-one days of the date of

3 this order.

4    IT IS SO ORDERED.

5    DATED:  August 9, 2010.

6

7

8                          LAWRENCE K. KARLTON
                           SENIOR JUDGE
9                          UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                              33