UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BARBARA WEBB,

           NO. CIV. S-10-0012 LKK/CMK

    Plaintiff,

  v.

           O R D E R

COUNTY OF TRINITY, LINDA
WRIGHT, LAURIE SUMNER,
ELIZABETH HAMILTON, and
DOES 1 through 50, inclusive,

    Defendants.
_____/

    Plaintiff Barbara Webb was formerly employed by the County of Trinity ("County") as a Social Worker Supervisor II. She alleges in her third amended complaint ("TAC") that after various misdeeds by her supervisor and other county employees, she was wrongfully demoted and then terminated. After proceedings before the California State Personnel Board ("SPB"), the County was ordered to reinstate plaintiff, but the County has refused to comply with this order. Following the County's refusal to comply with the SPB order, plaintiff brought the instant action.

1

1    Since the submission of her original complaint, plaintiff's
2 claims have narrowed considerably, and plaintiff's operative
3 complaint now states only one claim, namely that defendants
4 violated plaintiff's First Amendment right to free speech by
5 retaliating against her for complaining about the misuse of public
6 funds. Plaintiff alleges that defendants retaliated against her by
7 scheming and lying to have her fired, by demoting and subsequently
8 terminating her employment, and by refusing to reinstate her
9 despite an SPB order instructing them to do so. Defendants,
10 however, construe plaintiff's complaint as potentially enumerating
11 more than one claim. Defendants contend that plaintiff attempts to
12 articulate several theories of liability for violation of her
13 "constitutional rights" based on defendants' failure to rehire her
14 in violation of the SPB order. Defendants also challenge
15 plaintiff's theory of liability as to defendants Laurie Sumner
16 ("Sumner"), one of plaintiff's non-supervisory coworkers employed
17 as a Social Worker, and Elizabeth Hamilton ("Hamilton"), an
18 Americorps volunteer working under plaintiff's supervision at the
19 time of plaintiff's termination.
20   Defendants move to partially dismiss the TAC. Specifically,
21 they move to dismiss the remaining claims against Sumner and
22 Hamilton as well as any claim based on the "failure to rehire" SPB-
23 related allegations. In opposing the motion, plaintiff disputes
24 each of defendants' challenges and reiterates that she invokes the
25 failure to rehire solely as further evidence of defendants'
26 continued retaliation against her.

1  The court resolves the motion to dismiss on the papers and
2 after oral argument. For the reasons stated below, the motion
3 to dismiss is GRANTED in part and DENIED in part.

### I. BACKGROUND

#### A. Events Leading to Plaintiff's Termination

Plaintiff began working for the County in August 1999 as a Social Worker Supervisor II. TAC ¶ 10. In early 2007, plaintiff concluded that defendant Linda Wright ("Wright"), her supervisor, was allegedly misdirecting federal funds intended for Child Welfare Services to the Sheriff's Department. See TAC ¶ 11-12. In January 2007, plaintiff told County Sheriff Lorrac Craig ("Sheriff") that she did not think the funds should be directed to the Sheriff's department. TAC ¶ 12. She also told defendant Wright that she was concerned about the misuse of the funds and would tell auditors about the alleged misuse during the upcoming federal/state audit. Id. Three days after plaintiff voiced her concerns to Wright, plaintiff alleges that Wright "had a clandestine meeting . . . at Wright's home" with defendant Sumner to discuss a plan "regarding supervising the Child Welfare Unit." Plaintiff appears to claim that this meeting initiated the scheme between Wright, Sumner, and Hamilton, to demote and terminate plaintiff.

On February 7, 2007, plaintiff received a notice of intent to demote. TAC ¶ 15. Plaintiff was placed on administrative leave at that time. While on leave, plaintiff reported the misuse of funds to various legislators and other public officials. TAC ¶ 16. On April 16, 2007, she received notice of her disciplinary demotion

1 to the position of Social Worker III, with a final effective date
2 of April 16, 2007. Id. She was ordered to return to work on April
3 30, 2007. Id. Prior to her scheduled return, on April 25, the
4 County sent a notice of intent to terminate to plaintiff. TAC ¶ 17.
5 On May 25, 2007, plaintiff received a notice of termination,
6 effective the same day. Id. Plaintiff continued to report the
7 alleged misuse of public funds to public officials even after
8 receiving the notice of termination. TAC ¶ 18.

9     Plaintiff maintains that the demotion and termination were
10 based on "false allegations" that defendants Wright, Sumner, and
11 Hamilton made against her as part of their scheme to discredit
12 plaintiff and to have her demoted and fired so that she would be
13 unable to tell auditors about the misused funds. TAC ¶ 19, 24.
14 Plaintiff claims that both Sumner and Hamilton benefitted from her
15 termination in that they respectively received a promotion and a
16 permanent position as a Social Worker following plaintiff's
17 termination. Id.

18     **B.**    **State Administrative Proceedings**

19     Plaintiff challenged her demotion and dismissal before a a
20 state administrative law judge ("ALJ"). The ALJ held over a dozen
21 hearings on the matter over the course of two years. Plaintiff
22 subsequently appealed the ALJ's decision to the SPB. TAC ¶ 20. The
23 SPB ordered the County to reinstate plaintiff as a Social Worker
24 III and to give her back pay and benefits, which the County refused
25 to do. Id. In April 2010, plaintiff alleges that the County made
26 a sham offer of employment to plaintiff by offering plaintiff a

4

1  position with the Sheriff's Department, contingent on a
2  probationary period, for which plaintiff alleges she is not
3  qualified and cannot pursue, even if it were a legitimate offer,
4  as a result medical instruction. TAC ¶ 21, 23.
5      Plaintiff argues that none of these events, including the
6  County's refusal to reinstate her, would have taken place had she
7  refrained from voicing her concerns regarding the federal funds.
8  TAC ¶ 22.
9      **C.   Procedural History**
10     The instant suit was initially filed in state court. Before
11 serving the complaint on any defendant, plaintiff substituted a
12 first amended complaint. After service, defendants removed the suit
13 to federal court on the basis of the federal claims alleged
14 therein. Defendants then filed a motion to dismiss the complaint
15 in its entirety. On the parties' stipulation, the court granted
16 this motion in full and granted plaintiff leave to file an amended
17 complaint without reaching the merits of the motion. Plaintiff
18 filed a second amended complaint ("SAC") and defendants filed a
19 motion to dismiss that complaint in its entirety. On August 10,
20 2010, the court granted the second motion to dismiss with prejudice
21 as to all state law claims, denied the motion regarding the alleged
22 First Amendment violation that is the focus of this complaint, and
23 granted the motion as to all other federal law claims dismissing
24 them without prejudice. ECF No. 35. Plaintiff filed the TAC on
25 August 30, 2010. ECF No. 37.
26 ////

5

## II. STANDARD FOR A FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS

A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations. Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1950 (2009). "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. Id. at 1949-50. Iqbal and Twombly therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Id.; Erickson v. Pardus, 551 U.S. 89 (2007).

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for

6

the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

### III. ANALYSIS

**A.   Whether Non-Supervisory Co-Employees Can Act Under Color of Law.**

Defendants assert that plaintiff's § 1983 claim is legally insufficient as to defendants Sumner and Hamilton because non-supervisory co-employees and subordinates of the plaintiff do not purport to wield state-conferred authority over the plaintiff, and therefore could not have acted "under color of law." Defs.' Mem. at 4-5.

A person acts under color of law for purposes of 42 U.S.C. § 1983 if that person "exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). Whether a state employee acts under color of law turns on the relationship of the wrongful act to the performance of the defendant's state duties. Dang Vang v. Vang Xiong X Toyed, 944 F.2d 476, 479 (9th Cir. 1991). Defendants' suggestion that retaliatory

behavior towards a co-worker can never implicate state power is unfounded in both logic and law. A state official may be liable for co-worker retaliation under section 1983 when the retaliation is related to state-conferred authority or duties - the same test that applies when the victim is not a state employee. See Dang Vang, 944 F.2d at 479. Accordingly, the court must determine whether Sumner and Hamilton's actions in this case were sufficiently "related to the duties and powers incidental to the job" of a social worker and an Americorps volunteer,[1] respectively, to state a claim. See Anthony v. County of Sacramento, Sheriff's Dept., 845 F. Supp. 1396, 1400 (E.D. Cal. 1994) (citing Dang Vang, 944 F.2d at 480).

Plaintiff has pled no facts demonstrating that either the job of a social worker or an Americorps volunteer includes responsibility for the distribution of funds to Children's Protective Services and, therefore, encompasses responding to complaints about misuse of public funds. Without such responsibility, defendants could not have abused the positions given to them by the state in allegedly retaliating for speech protesting improper use of public funds. Therefore, the allegations that defendants Sumner and Hamilton told retaliatory "lies" about plaintiff cannot support a viable claim under section 1983. Although the "false allegations" allegedly occurred in a state-created workplace, they are independent of the defendants' state

---

[1] The court assumes, without deciding, that an Americorps volunteer is a state employee for purposes of section 1983 liability.

8

1  roles and functions. See Dang Vang, 944 F.2d at 479-80. Thus, the
2  court grants defendants' motion to dismiss plaintiff's claim
3  insofar as they are premised upon a theory that Sumner and
4  Hamilton's actions in this case were sufficiently related to the
5  duties and powers incidental to the job for liability under § 1983
6  to lie.

       **B.**    **Establishing Section 1983 Liability Via Conspiracy**

8      Plaintiff also attempts to establish defendants Sumner and
9  Hamilton's liability under § 1983 by alleging that they conspired
10 with defendant Wright "to deprive plaintiff of constitutional
11 rights." TAC ¶ 4. An allegation that a private person conspired
12 with a state official satisfies the requirement that a defendant
13 acted under color of state authority. Franklin v. Terr, 201 F.3d
14 1098, 1100 (9th Cir. 2000).

15     To establish the defendants' liability for a conspiracy, a
16 plaintiff must demonstrate the existence of " 'an agreement or
17 'meeting of the minds' to violate constitutional rights.' "
18 Mendocino Envtl. Center v. Mendocino County, 192 F.3d 1283, 1301
19 (9th Cir. 2000) (citing United Steelworkers of America v. Phelps
20 Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir.1989) (en banc)). The
21 defendants must have, "by some concerted action, intend[ed] to
22 accomplish some unlawful objective for the purpose of harming
23 another which results in damage." Gilbrook v. City of Westminster,
24 177 F.3d 839, 856 (9th Cir. 1999). Such an agreement need not be
25 overt, and may be inferred on the basis of circumstantial evidence
26 such as the actions of the defendants. See id. at 856. For example,

demonstrating that the alleged conspirators have committed acts that "are unlikely to have been undertaken without an agreement" may allow a jury to infer the existence of a conspiracy. <u>Mendocino Envtl. Center</u>, 192 F.3d at 1301 (quoting  <u>Kunik v. Racine County</u>, 946 F.2d 1574, 1580 (7th Cir. 1991)).

In the instant case, plaintiff has sufficiently pled circumstantial facts indicating a possible "agreement" between defendants Wright, Sumner, and Hamilton to demote and terminate plaintiff. Specifically, plaintiff alleges that Sumner met with Wright, at Wright's home, to discuss supervision of the unit that was under plaintiff's supervision at that time. Plaintiff further alleges that her demotion was based on false allegations that Wright, Sumner, and Hamilton made after this meeting took place. TAC ¶ 14.

Further, plaintiff alleges that defendant Hamilton participated in the conspiracy to have plaintiff demoted and fired by making "false allegations" against her. TAC ¶ 19. Plaintiff has not pled any facts expressly indicating, circumstantially or otherwise, that Hamilton made the false allegations as a result an agreement with Wright. Nonetheless, the timing of Hamilton's allegedly false statements and the subsequent benefits obtained by Hamilton after plaintiff's termination are sufficient to infer a conspiracy.[2]

---

[2]  While the court does not decide whether an Americorps volunteer is a state employee, it notes that even if such a volunteer is not, she may nevertheless be a state actor under § 1983 where conspiracy with government officials is alleged. <u>See</u>

10

Defendants contend that even assuming they can be said to have conspired to retaliate against plaintiff for exercising her First Amendment rights, defendants cannot be held liable for conspiracy because the intracorporate conspiracy doctrine, which states that a conspiracy requires agreement between two or more persons or distinct business entities, would bar such a claim. See United States v. Hughes Aircraft Co., Inc., 20 F.3d 974, 979 (9th Cir. 1994). The doctrine provides that, as a matter of law, an entity cannot conspire with its own employees or agents. Hoefer v. Fluor Daniel, Inc., 92 F. Supp. 2d 1055, 1057 (C.D. Cal. 2000).

Defendants assert that defendants are County employees or County volunteers alleged to have conspired to demote and terminate plaintiff in retaliation for expressing concern regarding Wright's misuse of public funds and, thus, that no liability can attach if the intracorporate conspiracy doctrine applies. Defs.' Mem. at 7. Defendants concede that the Ninth Circuit has not expressly addressed whether the doctrine applies either to government entities or to civil rights claims, see id., but argue that this court should follow the reasoning of other courts that have applied the doctrine in both cases.

Five circuits have extended the intracorporate conspiracy doctrine to actions under §§ 1983 and 1985, while five others have severely limited or questioned the applicability of the doctrine in the civil rights context. However, even those circuits that

---

Adickes v. Kress & Co., 398 U.S. 144 (1970).

11

extend the doctrine to civil rights cases would not apply it here. Courts have recognized an exception where an officer or agent has " 'an independent personal stake in achieving the corporation's illegal objective.' " Buschi v. Kirven, 775 F.2d 1240, 1252 (4th Cir. 1985); see also Garza v. City of Omaha, 814 F.2d 553, 556 (8th Cir. 1987).

If it were clear that the individual defendants acted pursuant to a single County policy or objective, the question may be viewed as more difficult. However, there is no indication that defendants were acting pursuant to an official County policy or objective. In fact, plaintiff alleges that "Wright was misdirecting federal funds" and that Wright threatened to terminate plaintiff if she informed anyone, including the Board of Supervisors, of Wright's "misconduct." See TAC ¶ 12, 24. Thus, plaintiff alleges that Wright had a personal stake in seeking first to deter and later to retaliate against plaintiff for voicing her concerns regarding the misuse of public funds. As for defendants Sumner and Hamilton, plaintiff alleges that they stood to gain, respectively, a promotion and permanent employment as a result of aiding defendant Wright in her efforts to demote and terminate plaintiff. TAC ¶ 19. Plaintiffs allegations, therefore, suggest that defendants were acting for their own personal purposes. Under these circumstances, it is clear that the intracorporate conspiracy doctrine does not apply in this case, even assuming that the doctrine is applicable to civil rights cases and government entities at all. Accordingly, the Court denies defendants' motion to dismiss plaintiff's against

Sumner and Hamilton insofar as it is premised upon a conspiracy theory.

### C. Denial of a Privilege Created by State Law May Constitute Retaliation

Defendants misconstrue plaintiff's retaliation claim as a § 1983 claim premised on violation of state law. Rather, plaintiff alleges that defendant Wright, "acting as policymaker on behalf of the County . . . refused to return plaintiff to work as a Social Worker III" in violation of an SPB order in retaliation for plaintiff's exercise of her right of free speech. This constitutes an allegation of violation of the First Amendment to the U.S. Constitution, which is actionable under § 1983. In order to prevail on her claim under § 1983, the plaintiff must prove:(1) she engaged in constitutionally protected activity; (2) as a result, she was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. Blair v. Bethel Sch. Dist., 608 F.3d 540, 543 (9th Cir. 2010) (citing Pinard v. Clatskanie Sch. Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006)).

Here, plaintiff has stated a colorable claim that defendants retaliated against her by failing to rehire her in violation of the SPB order. TAC ¶ 22. The alleged refusal of reinstatement in violation of the SPB order constitutes a denial of a governmental benefit redressable by § 1983. See e.g., Manhattan Beach Police

Officers v. Manhattan Beach, 881 F.2d 816, 819 (9th Cir. 1989). Therefore, defendants' motion to dismiss the portion of the retaliation claim that is premised on the County's failure to reinstate plaintiff is denied.

### D. April 2010 Job Offer

Defendants further argue that, even if plaintiff's claim of retaliation based on the failure to rehire is a viable one, defendants' are immunized from liability stemming from the April 2010 job offer and the failure to reinstate plaintiff under the Noerr-Pennington doctrine because the job offer and discussions of reinstatement "occurred in the course of . . . settlement negotiations." Defs.' Mem. at 14-15.

The Noerr-Pennington doctrine provides that those who petition the government are "generally immune from statutory liability for their petitioning conduct." Sosa v. DIRECTV Inc., 437 F.3d 923, 929 (9th Cir. 2006); see also Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005) (applying doctrine to claims under § 1983 that are based on the petitioning of public authorities). This doctrine simply does not provide any protection to defendants. Defendants nowhere argue that in making a settlement offer to plaintiff that they were petitioning the government. Indeed, it seems unlikely that they could.

Defendants, however, do raise a concern as to whether the offer was made in the context of a settlement discussion. Evidence of offers to compromise are generally inadmissible. Fed. R. Civ. P. 408. The purpose of this rule is to "protect the confidentiality

14

of settlement negotiations." McCown v. City of Fontanta, 565 F.3d 1097, 1105 (9th Cir. 2009); see Rhoades v. Avon Products, Inc., 504 F.3d 1151, 1161 (9th Cir. 2007) ("Rule 408 is designed to ensure that parties may make offers during settlement negotiations without fear that those same offers will be used to establish liability should settlement efforts fail.").

Defendants assert that the April 2010 job offer "occurred in the course of and pursuant to settlement negotiations" and, therefore, is protected activity. Plaintiff, however, maintains that the April 2010 job offer was completely unrelated to settlement negotiations. Pl's. Opp. at 7. Under the circumstances, the court lacks evidence sufficient to determine whether the offer was made during settlement discussions. Thus, this aspect of defendants' motion is denied without prejudice.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS IN PART Defendants' motion to dismiss, ECF No. 38, and ORDERS AS FOLLOWS:

(1) Defendants' motion is granted only insofar as plaintiff's claim against Sumner and Hamilton is premised upon the theory that their action in this case are sufficiently related to the duties and powers incidental to their jobs for § 1983 liability to lie.

(2) Defendants' motion is otherwise DENIED. The surviving theories of liability include, inter alia, that Sumner and Hamilton are liable under § 1983 as conspirators with government officials and that defendants' failure

15

```
                to reinstate plaintiff in violation of the SPB order
                constitutes a violation of the First Amendment.
     (3)  Defendants' motion to dismiss allegations of the April
          2010 job offer premised upon the Noerr-Pennington
          doctrine are DENIED WITH PREJUDICE.
     (4)  Defendants' motion to dismiss allegations of the April
          2010 job offer as privileged or otherwise inadmissible
          is DENIED WITHOUT PREJUDICE.
     IT IS SO ORDERED.
     DATED:  November 3, 2010.
```

_/s/ Lawrence K. Karlton_
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT